UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARLA PERSON,<br><br>  Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>  Defendant. | CASE NO. 13-5696 RJB<br><br>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. 21) and Plaintiff's Motion to Strike (Dkt. 28). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

In this diversity case, Plaintiff alleges that Defendant violated the Washington Law Against Discrimination, RCW 49.060.010, *et seq.*, ("WLAD"), when it constructively and wrongfully terminated her employment, or otherwise took an adverse employment action against her, based on her age. Dkt. 1-2. Defendant now moves for summary dismissal of the case. Dkt. 21. For the reasons set forth below, the motion for summary judgment should be denied.

### I.  FACTS

Plaintiff began working for Defendant in 1975 as a teller in Hawaiian Gardens, California. Dkt. 24, at 3. She eventually moved to Washington and became a personal banker in 2006. *Id.*, at 4. Personal bankers sell banking services and work to retain customers. *Id.*, at 6.

1  She worked at Defendant' Fourth Plain branch starting in 2010. *Id.*, at 4. There was one other
2  personal banker there at the time, Tina King. *Id.*, at 5. By 2011, her branch manager was
3  Melissa Young. *Id.*, at 7. Plaintiff was a successful employee and Ms. Young an able manager.
4  *Id.*, at 7-12. Ms. Young's manager was Brandi Campbell, who oversaw 16 branches in
5  southwestern Washington. Dkt. 25, at 25.

6       In late January or early February of 2012, Rachel Gustafson, who was under 30 years old,
7  joined the Fourth Plain branch as a personal banker, eventually replacing Ms. King. Dkt. 24, at
8  15. Ms. Gustafson and Ms. Campbell were friends and met while Ms. Gustafson worked at a
9  local restaurant. Dkt. 24, at 40. Ms. Gustafson has a master's degree in education. Dkt. 29-4, at
10 3. Plaintiff helped train Ms. Gustafson and felt that "they were feeding [Ms. Gustafson] sales and
11 trying to make her successful" and not doing that for Plaintiff at the "end." Dkt. 29-1, at 11.
12 Although in Plaintiff's opinion Ms. Gustafson was hard working and respectful, Plaintiff also
13 felt that Ms. Gustafson would sometimes ask "inappropriate" questions, like "how old are you"
14 or "when are you going to retire?" Dkt. 24, at 15.

15      In the spring of 2012, the bank issued a new staffing model, requiring Ms. Campbell
16 reduce one of the personal banker positions at the Fourth Plain branch. Dkt. 25, at 28. Ms.
17 Campbell, believing that the Fourth Plain branch needed two personal bankers, eliminated a
18 personal banker at another branch, hoping that would satisfy the new staffing model
19 requirements. Dkt. 25, at 29-31.

20      Ms. Young testified that she and Plaintiff had conversations about other career
21 opportunities, and that she was aware Plaintiff wanted to become an assistant manager or
22 possibly a mortgage loan officer. Dkt. 25, at 18. Plaintiff explains that these conversations were
23 related to her husband's potential relocation in the summer of 2012. Dkt. 30, at 5. She states
24

1  that his job opportunity did not work out and she ceased looking for alternative career options.

2  *Id.*

3        In the fall of 2012, Ms. Campbell was told that she had to reduce one of the personal

4  banker positions at the Fourth Plain branch to be in compliance with the Defendant's staffing

5  model. Dkt. 25, at 34-34.

6        In October of 2012, Plaintiff took a vacation. Dkt. 30, at 2. When she returned, on

7  Monday, October 29, 2012, she discovered that her desk had been cleaned out and someone else

8  was sitting at her desk. *Id.* Her personal items had been boxed up, the forms she used moved,

9  and her binders and other resources had either been removed or thrown out. *Id.*

10        According to Plaintiff, on Thursday, November 1, 2012, Ms. Young informed Plaintiff

11  that she and Ms. Campbell decided to eliminate Plaintiff's personal banking position at the

12  Fourth Plain branch. Dkt. 24, at 18. Plaintiff asked Ms. Young, "why me and not Rachel

13  [Gustafson]?" Dkt. 24, at 19. Ms. Young purportedly replied, "Because Brandi [Campbell]

14  doesn't want to lose Rachel to another market." Dkt. 24, at 19. Plaintiff made "it clear to Ms.

15  Young that [she] loved working at Fourth Plain and did not want to leave." Dkt. 30, at 4.

16        Ms. Young encouraged Plaintiff to seek other opportunities in the bank, including in the

17  mortgage department. Dkt. 24, at 19-20. The next morning, which was Friday, Ms. Young told

18  Plaintiff that she may have found a position for Plaintiff in the mortgage center. Dkt. 24, at 21-

19  22. After attending the 10:00 a.m. interview, Plaintiff declined the offer to join the mortgage

20  center because the salary was a monthly draw of $2,500 for one year, plus commissions, and the

21  draw had to be paid back out of earned commissions. Dkt. 24, at 22. Her position of personal

22  banker paid $52,000 a year plus bonuses. Dkt. 24, at 22.

23        That night, around 5:30 p.m., Ms. Young called Plaintiff into her office and told her to

24

report to the Cascade Park branch on Monday morning to cover for another personal banker who was out on leave. Dkt. 24, at 24. Plaintiff testified that the manager at Cascade Park "was hard to work with." Dkt. 24, at 26. Plaintiff testified that she felt that Ms. Young wanted her to quit because Ms. Young knew of the negative relationship between Plaintiff and the Cascade Park manager. Dkt. 24, at 25. Plaintiff further knew that there was not an open position for a personal banker at Cascade Park. Dkt. 24, at 25. Although Plaintiff was not told to clean out her desk or when her last day would be, Plaintiff assumed her termination was "effective immediately." Dkt. 24, at 25.

On Saturday, November 3, 2012, Plaintiff went to work at the Fourth Plain branch, and opened the building. Dkt. 24, at 27. She worked until about 10:30-11:00 a.m. Dkt. 24, at 27. When Ms. Young unexpectedly came in, Plaintiff states that her "heart started pounding" and she thought she "was having a heart attack." Dkt. 24, at 27. Plaintiff told Ms. Young that she was sick. Dkt. 24, at 29. She left the bank and went to the emergency room. Dkt. 24, at 27.

On Monday, November 5, 2012, Plaintiff did not report for work. Dkt. 24, at 28. She submitted a doctor's note that she was unable to work from November 5, 2012 to December 3, 2012. Dkt. 25, at 40. Her leave of absence was approved. Dkt. 24.

Ms. Young sent text messages to Plaintiff and called her while she was out on sick leave. Dkts. 24, at 30; and 25, at 19. For example, Ms. Young texted Plaintiff on November 6, 2012: "[w]ill you call when you get a chance . . . we are trying to find you a work home. Thank you." Dkt. 25, at 19. Plaintiff did not respond or attempt to call the bank, Ms. Young, or Ms. Campbell. Dkt. 24, at 31. Plaintiff acknowledges that they tried to find her other jobs, including offering her position back as a personal banker at either the Fourth Plain branch or at the Orchid branch. Dkt. 24, at 32-33. Plaintiff stated that she did not take either position because she felt

1  that her relationship with the bank was "severed and broken." Dkt. 24, at 33.

2  Plaintiff did not return to work. Dkt. 24, at 28. On December 7, 2012, Defendant wrote
3  Plaintiff a letter and informed her that if she did not contact her manager or otherwise return to
4  work, her absence would be considered unauthorized. Dkt. 24, at 28. Plaintiff testified that she
5  did not go back because she felt that she did not have a position to go back to. Dkt. 24, at 29.
6  Plaintiff testified that other than this instance, Defendant did not discriminate against her based
7  on her age. Dkt. 24, at 36.

8  Defendant moves to summarily dismiss Plaintiff's case, arguing that it did not constructively
9  discharge her or wrongfully terminate her employment. Dkt. 21. Defendant's motion is 15
10 pages long. *Id.* In support of its motion, Defendant filed a separate "Statement of Undisputed
11 Facts" (Dkt. 22), which is 26 pages long. Plaintiff opposes the motion, arguing that her claim is
12 not only that she was constructively or wrongfully discharged, but that Defendant took an
13 adverse employment action against her based on her age contrary to WLAD. Dkt. 28. Plaintiff
14 also moves to strike Defendant's "Statement of Undisputed Facts" (Dkt. 22), arguing that not all
15 the statements contained therein are undisputed, and that it exceeded the 24 page limit allowed
16 under the Local Rules W.D. Wash 7(e)(3). Dkt. 28. Defendant replied (Dkt. 32) and the
17 motions are now ripe for decision.

18 This opinion will first address the Plaintiff's motion to strike (Dkt. 28) and then the
19 Defendant's motion for summary judgment (Dkt. 21).

20 **II.   DISCUSSION**

21 **A. PLAINTIFF'S MOTION TO STRIKE**

22 Plaintiff's Motion to Strike (Dkt. 28) should be denied. Although Defendant did exceed the
23 page limits allowed by LCR 7(e)(3), the rule also provides that the court "may refuse to consider
24

text . . . which is not included in the page limits." In an effort to fully and fairly consider the merits of the motion, the extra pages should be considered. Defendant is encouraged to review the Local Rules. In any event, the "Statement of Undisputed Facts" was of limited value.

### B. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts

1    specifically attested by the moving party.  The nonmoving party may not merely state that it will
2    discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial
3    to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).
4    Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not
5    be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).
6          The Ninth Circuit has provided additional guidance when an employer brings a motion
7    for summary judgment in an employment discrimination case.  Such motions must be carefully
8    examined in order to zealously guard an employee's right to a full trial, since discrimination
9    claims are frequently difficult to prove without a full airing of the evidence and an opportunity to
10   evaluate the credibility of the witnesses.  *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1112
11   (9th Cir. 2004).  This high standard means that an employee need only produce "very little
12   evidence" to survive summary judgment in a discrimination case because the ultimate question is
13   one that can only be resolved through a "searching inquiry" – one that is most appropriately
14   conducted by the factfinder, upon a full record.  *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d
15   1406, 1410 (9th Cir. 1996) (internal quotations omitted).

16   **C.  DEFENDANT'S MOTION TO SUMMARILY DISMISS WLAD CLAIM**

17        Plaintiff claims that Defendant violated the WLAD when it eliminated her position because
18   of her age.  Dkt. 1-2.
19        The WLAD prohibits employers from discharging "any person from employment
20   because of age . . ." or discriminating against "any person in compensation or in other terms or
21   conditions of employment because of age . . ."  RCW 49.60.180(2)-(3); *see also* RCW 49.44.090
22   (providing "it shall be an unfair practice for an employer . . . because an individual is forty years
23   of age or older . . . to terminate from employment such individual" or to "discriminate against
24

such individual . . . in terms, conditions or privileges of employment"). Washington courts have largely adopted the federal burden-shifting scheme announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), when evaluating employment age discrimination cases under WLAD. *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wash.2d 355, 361–62 (1988); *Scrivener v. Clark College,* 176 Wash.App. 405, 411 (2013). Under this scheme, the employee has the initial burden of presenting a prima facie case of age discrimination. *Id*. If the employee succeeds, "the burden of production shifts to the employer, who must show a legitimate, nondiscriminatory reason for its conduct." *Id.* "If the employer meets its burden of production, the employee must then show that the employer's proffered reason was mere pretext for discrimination." *Id.*

To establish a prima facie case of age discrimination in employment, the Plaintiff must show: (1) she was within the statutorily protected age group of employees 40 years of age or older, (2) she was discharged or suffered an adverse employment action, (3) she was doing satisfactory work, and (4) she was replaced by a significantly younger person or employees with similar qualifications were treated more favorably. *Becker v. Washington State University,* 165 Wash.App. 235, 252 (2011); *Martini v. Boeing Co*., 137 Wn.2d 357 366 (1999)(holding that plaintiffs need not show discharge but can make a claim on other adverse employment actions under WLAD).

Plaintiff has met her burden on elements one, three, and four of the prima facie case. As to the first element, it is undisputed that Plaintiff, at 58, was within the statutorily protected age group. RCW 49.44.090(1)(it is unlawful to discriminate against an individual in . . . any condition of employment if that individual is forty years of age or older). As to the third element, it is also undisputed that Plaintiff was doing satisfactory work. Lastly, it is undisputed

1   that Ms. Gustafson, who was around the age of 30, did not have her position with the bank

2   eliminated. Accordingly, Plaintiff has made a showing on the fourth element, that an employee

3   with similar qualifications was treated more favorably.

4       Defendants' motion does not address the *McDonnell Douglas* burden shifting scheme,

5   but does contest the second element - that Plaintiff was discharged or suffered an adverse

6   employment action. Dkt. 21. The Defendant argues that Plaintiff cannot show that she was

7   discharged either actually or constructively. Dkt. 21. It argues that is did not engage in

8   deliberate conduct which made the Plaintiff's working conditions intolerable, a reasonable

9   person would not feel forced to resign, she did not resign solely because of alleged intolerable

10  working conditions, and evidence of a transfer or demotion is not sufficient to establish

11  constructive discharge. Dkt. 21. Further, Defendant argues that her resignation is presumed

12  voluntary. *Id.*

13       Plaintiff argues in her Response that she suffered an adverse employment action – she,

14  and not Ms. Gustafson, was informed her position was cut from Fourth Plain and was not offered

15  any equivalent job opportunity within the bank. Dkt. 28, at 11. Further, she argues that she was

16  constructively discharged through a pattern of "intolerable working conditions." Dkt. 28, at 12.

17  She asserts she was subjected to aggravated circumstances or a continuous pattern of

18  discrimination based on the following: 1) Ms. Campbell knew when Ms. Gustafson was hired

19  that Defendant would be making cuts to the personal banker position in her market; 2) Plaintiff

20  asserts that the Defendant funneled business opportunities to Ms. Gustafson, and did not do so

21  for her toward the "end;" 3) she argues that she "was required to participate in training her

22  eventual replacement," Ms. Gustafson; 4) she was subjected to Ms. Gustafson's questions about

23  her age and retirement; 5) at the end of October, after returning from vacation, her personal items

24

1 had been boxed up, forms moved, and binders and resources removed; 6) a few days later, she
2 was informed her position had been cut because Ms. Campbell did not want to lose Ms.
3 Gustafson to another market; 7) she was told to go home and look for another job and consider
4 employment an hour away; 8) and she was directed to report to a banking center on Monday that
5 was less desirable, to work for a manager with whom she had a negative relationship, and that
6 only had an opening for a lower, lesser-paid position. Dkt. 28, at 13-14.

7 Under the circumstances here, Plaintiff has carried her burden to show that she suffered
8 an adverse employment action under WLAD. Plaintiff has presented enough evidence to make
9 out a prima facie case of age discrimination. Defendant's motion for summary judgment (Dkt.
10 21) should be denied.

## III. ORDER

Therefore, it is hereby **ORDERED** that:

- Plaintiff's Motion to Strike (Dkt. 28) **IS DENIED**; and
- Defendant's Motion for Summary Judgment (Dkt. 21) **IS DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 6th day of June, 2014.

*/s/ Robert J. Bryan*

ROBERT J. BRYAN
United States District Judge